UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

JAMES D. HILL,                      ]
                                    ]
    Plaintiff,                      ]
                                    ]
vs.                                 ]    CV 09-J-299-NE
                                    ]
MICHAEL ASTRUE,                     ]
**Commissioner of the Social**      ]
**Security Administration**,        ]
                                    ]
    Defendant.

**MEMORANDUM OPINION**

The plaintiff appeals from the decision of the Commissioner of Social Security denying him disability insurance benefits and supplemental security income. The case is now properly before the court. See 42 U.S.C. § 405(g). The plaintiff alleges an inability to work due to a steel rod in his left arm, high blood pressure, a hernia, diabetes and kidney problems (R. 130). The plaintiff also suffers from gout (R. 37). He explained that he has polycystic kidneys, causing him to have frequent kidney stones, his legs and ankles and feet swell up, he has problems with his back, and his left arm goes numb sometimes (R. 32-33).

The ALJ found that the plaintiff's impairments which are severe are polycystic kidney disease, status post fracture of the left arm with rod placement, history of kidney stones, and obesity (R. 12), but no impairment, alone or in combination, constituted an impairment listed in, or medically equal to, one of those listed in Appendix 1 of Subpart P, 20 CFR Part 404 (R. 13).

The ALJ found that the plaintiff retained the residual functional capacity to perform a reduced range of light work, further limited by the requirement of a sit/stand option, occasional balancing, stooping, kneeling, crouching, and crawling, occasional climbing ramps, stairs, ladders, ropes, and scaffolds, a limitation against performing overhead lifting with his left arm, and bathroom breaks every two hours (R. 13). The ALJ determined that the plaintiff could not perform his past relevant work but could perform work which existed in significant numbers in the national economy, and therefore concluded that the plaintiff was not disabled within the meaning of the Social Security Act (R. 16-17).

The plaintiff argues that the final decision of the Commissioner of Social Security denying disability benefits to the plaintiff is not supported by substantial evidence, and that improper legal standards were applied. Specifically, the plaintiff argues that the ALJ erred by improperly applying the pain standard (doc. 8). The court has considered the record and the briefs of the parties. For the reasons set forth herein, the decision of the Commissioner is **REVERSED.**

## Factual Background

The plaintiff was born on January 2, 1964, and completed the twelfth grade in school (R. 29). He spent six years in the National Guard as a medic (R. 30), and thereafter has past relevant work as a forklift operator, which is medium/heavy work and semi-skilled, a delivery truck driver, also medium and semi-skilled work, and a warehouse worker, which is medium/heavy and unskilled work (R. 49). The ALJ

found no evidence that the plaintiff had engaged in substantial gainful activity since his alleged onset date (R. 12).

At the hearing, the plaintiff testified the pain from his kidney stones gets so severe he cannot stand it (R. 33). He has kidney stones three or four times a month, it causes his feet and ankles to swell, and he has he to go to the bathroom as much as two times an hour (R. 36). When he has kidney stones, the pain is off the scales, although sometimes he passes the stones without knowing it (R. 37). The kidney disease also causes a variety of digestive tract issues as well (R. 38). The plaintiff also asserts his back hurts, but cannot afford to go get an MRI (R. 39). He testified that out of a week, he probably has four bad days and three good days (R. 39). He spends three to four hours a day lying down with his legs elevated (R. 40). Although the plaintiff takes pain medication, it makes him "dizzy-headed" sometimes (R. 42). According to the plaintiff, he can walk about 100 yards (R. 43), stand for 30-45 minutes and sit about an hour at a time (R. 44). He testified that he does not go anywhere due to the pain (R. 45).

Upon consultative examination, Dr. Martin Gill opined that the plaintiff had a history of kidney stones, with vague complaints of morning nausea and frequent urination; a history of humerus fracture with current left arm pain; and undiagnosed low back pain (R. 240).

One of plaintiff's treating physicians, Dr. David Morgan, noted that the plaintiff has kidney stones and x-rays have noted cysts, one of which was hemorrhaging (R.

287). Dr. Morgan noted that the plaintiff's kidney's looked worse than before, and he could not tell which cyst was referred to as hemorrhaging because the plaintiff had so many (R. 287). Dr. Morgan also noted that the plaintiff had pain, numbness/tingling, excessive thirst, was tired/sluggish, had abdominal pain, nausea/vomiting, chest pain, hypertension, joint pain, back pain, and urinary frequency (R. 287). Dr. Morgan diagnosed the plaintiff as suffering from polycystic kidney disease, bilateral renal stones, hypertension, and obesity (R. 288). Dr. Morgan believed all the current stones to be passable, and told the plaintiff to let him know when he needed medical care due to the stones (R. 288).

The plaintiff is also followed by Limestone Community Care. Records from there reflect ongoing complaints of dizziness (R. 310, 312), nausea (R. 312), chronic back pain described as "sharp" (R. 317, 319, 321), and constant arm pain (R. 319).

A consultation in December 2006 and a progress note in February 2007, both from Dr. Qureshi, reflect that the plaintiff has recurrent urolithiasis, with multiple stones seen on CT, occasional urinary tract infections, hemorrhage into the cyst; previous stone extractions, hypertension, occasional chest pain, occasional right hip pain, and occasional rectal bleeding (R. 323, 324, 332). The plaintiff also complained of dysphagia, for which Dr. Qureshi recommended an endoscopy, but noted that the plaintiff wanted to wait until he had insurance (R. 323). He also complained of pain in the "balls of his feet" for which Dr. Qureshi noted he needed his uric acid level checked (R. 332). In August 2007 the plaintiff stated his foot pain

was worse although he was taking his "gout medicine" (R. 333). Dr. Qureshi told the plaintiff to reduce the Lortab he was taking to one time a day, and a nurse practitioner with Dr. Qureshi prescribed naproxen for his foot and back pain (R. 333-334). Dr. Qureshi also wanted to have the plaintiff undergo a colonoscopy, but the plaintiff declined due to his lack of medical insurance (R. 336).

Medical records from Dr. W. S. Pennington reflect the plaintiff's multiple complaints of pain (R. 329). His records note that the plaintiff takes Lortab for pain and is applying for disability (R. 330). A January 25, 2007, notation reflects that the plaintiff stated his medical problems interfered with his life and were getting worse (R. 330). A February 2007 notation states that "we are trying to get him in Kirklan Clinic but not progressing yet at this...." (R. 330). In the fall of 2007, these records reflect the plaintiff's ongoing complaints of pain in his back and hip, as well as that he is hoping for disability benefits (R. 343). However, those records also not that the planitiff wanted "more Lortab & Xanax – NO" (R. 344).

At the hearing, the ALJ asked the VE to assume an individual with the plaintiff's age and education, with the prior work history of the plaintiff, who can perform medium work, stand and/or walk for 6 hours in an 8 hour work day, sit with normal breaks for a total of 6 hours in an 8 hour work day, with no limitations on the ability to push and/or pull including operation of hand or foot controls, with the limitation of no overhead lifting with his left upper extremity (R. 50). The VE testified that such a person could return to the plaintiff's past relevant job as a delivery truck

driver, assuming no loading and unloading was required (R. 50). Other jobs would be available as well as well (R. 51). In the light work category, there would be jobs including a photocopy operator, a ticket marker, and a packager (R. 51).

With limitations including light level work, a sit/stand option, occasional postural maneuvers, occasional climbing, and no overhead lifting on the left side, the VE testified that all past relevant work would be precluded but the previously mentioned light level jobs would still be available (R. 52). In response to a question from plaintiff's counsel, the VE agreed that the need to go to the restroom hourly would preclude all work activity (R. 53). Additionally, absence of more than two days a month from work would preclude all employment as well (R. 53).

## Standard of Review

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining: 1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and 2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S. Ct. 1420, 28 L. Ed. 843 (1971); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)(citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a

conclusion." *Id*. The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. *See id.* Moreover, failure to apply the correct legal standards is grounds for reversal. See *Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir. 1984).

**Legal Analysis**

The ALJ focused solely on the report of Dr. Gill, adopting Dr. Gill's conclusion that the plaintiff was "vague" as to how his polycystic kidney disease actually bothers him (R. 15, 16). The ALJ also found the plaintiff "vague" as to how his left arm bothers him (R. 15). The ALJ wholly failed to note plaintiff's diagnosis and treatment for gout. Rather, the ALJ merely states that "[t]he claimant's allegations of gout are not supported in the record. This is not a medically determinable impairment" (R. 16). This court notes that gout is a form of arthritis, defined as a sudden onset of pain in the joints, caused by a build up or uric acid.[1] *See e.g.*, http://www.nlm.nih.gov/medlineplus/gout.html. It is diagnosed by testing uric acid blood levels. See e.g. R. 341, 342. Dr. Qureshi's records reflect that in response to complaints of continued foot pain, the plaintiff's uric acid level was elevated and his medication, allopurinol, was increased (R. 336). Similarly, in noting that the plaintiff's uric acid level was high, the fact that plaintiff took gout medicine was recorded (R. 334). For

---

[1]According to the National Institute of Health:

At first, gout attacks usually get better in days. Eventually, attacks last longer and occur more often. Uric acid buildup can lead to kidney stones. Untreated gout can cause permanent joint and kidney damage. You can treat gout with medicines.

http://www.nlm.nih.gov/medlineplus/gout.html

the ALJ to find a diagnosis of gout was not contained in the record and was not a "medically determinable impairment" is simply against the evidence.[2]

Both gout and frequent kidney stones are well recognized as conditions which can cause severe pain. However, the ALJ never addressed whether the plaintiff's allegation of disabling pain was credible, nor whether the plaintiff suffered from any condition which could cause such pain. Rather, the ALJ simply ignored the plaintiff's allegations of disabling pain and thus just failed to apply the pain standard.

The ALJ wholly failed to apply the three part pain standard mandated by the Eleventh Circuit Court of Appeals when an individual alleges disability based on pain or other subjective symptoms. He notes that the plaintiff's medically determinable impairments could be expected to produce the alleged symptoms, but not at the intensity, persistence and limiting effects alleged (R. 15). The ALJ noted that while the plaintiff does have polycystic kidney disease, the plaintiff was "vague" about how this actually bothers him (R. 15). The plaintiff testified at his hearing that:

> I have polycystic kidneys and it causes me to have kidney stones very frequently. It causes my legs and ankles and feet to swell up and I also have a condition with my back and my left arm.

---

[2] The court is unclear on what the ALJ intended by finding that gout and back pain are not "medical determin*able* impairments" (emphasis added). The court believes the ALJ meant that there was no evidence that the plaintiff had been diagnosed with these impairments, and thus they were not "medically determin*ed*." However, as the ALJ's opinion reads, he appears to be asserting that these are impairments which cannot be diagnosed and hence are not "medically determinable" impairments. In any event, the court notes that gout is most certainly capable of medical diagnosis, as is back pain.

(R. 32). Later, when asked if he could do a job where he "could sit and stand whenever you wanted to and just make change as cars parked," the plaintiff responded

> No, sir, I don't think I could because of the pain when it comes I can't concentrate on my work, what I'm supposed to be focused on. It gets so severe that I just can't stand it.

(R. 33). The plaintiff explained

> I have cysts on my kidneys and my liver and I have frequent times of kidney stones, it causes kidney stones a lot. I have them about three to four months and then it causes my ankles and feet to stay swollen up and stiff like that.

(R. 36). He further stated that when he has kidney stones, the pain level is "off the scales" and that although sometimes he passes them without knowing it, it's "pretty severe" (R. 37). When it does, on a scale of zero to ten, the pain is at least a 10 (R. 37). The court finds nothing vague about the plaintiff's allegations concerning how polycystic kidney disease affects him. Similarly, when asked what his problem with his left arm was, the plaintiff stated that "I can't lift no weight with it. I can't grip with it much real good and if I, if I do something with it to try to pick up something, sometimes it'll lock in position with me and I have to like get in an awkward position to make it unlock to where I could get it back the way it's supposed to be" (R. 41). The court finds nothing vague about the plaintiff's alleged limitations with his left arm.

Proper application of the pain standard, used when a claimant seeks to establish disability through his or her own testimony of pain or other subjective

symptoms, requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir.1995) (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991)).

While the standard requires objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, it does not require objective proof of the pain itself. Thus under both the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the standard a plaintiff who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. *See* 20 CFR §§ 404.1529 and 416.929. This same standard applies to testimony about other subjective symptoms. Furthermore, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Foote,* 67 F.3d at 1561. Therefore, if a plaintiff testifies he suffers from pain or other subjective symptoms at a level that would prevent work and he satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

13

The medical records demonstrate that the plaintiff has had ongoing complaints of pain for which his treating physician has prescribed ever increasing doses of pain medication. No doctor has opined that the plaintiff is exaggerating his pain or malingering. The evidence establishes that the plaintiff suffers from conditions known to cause severe pain. He has reported to his doctors he suffers from severe pain. His doctors have in turn prescribed pain medication. Tests for uric acid levels are objective evidence of an underlying medical condition that is of a severity that it can be reasonably expected to give rise to the alleged pain. The removal of kidneys stones is objective evidence of an underlying medical condition that is of a severity that it can be reasonably expected to give rise to the alleged pain. The objective test evidence finding multiple kidney stones, cysts and hemorrhaging cysts are also objective evidence of an underlying medical condition that is of a severity that it can be reasonably expected to give rise to the alleged pain.

The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-1146 (11th Cir.1991). Here, sufficient reasoning has not been provided. "As the hearing officer, [the ALJ] may not arbitrarily substitute his own hunch or intuition for that of a medical professional." *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir.1992). In the record before this court, plaintiff's treating doctors carefully detailed the plaintiff's medical problems. The ALJ did not consider all of the evidence that

14

was introduced into evidence. The record clearly establishes, by more than substantial evidence, that the plaintiff's host of ailments prevent work activity on a sustained, eight hour a day, five day a week basis. The ALJ could only reach the result he did by ignoring the objective medical evidence, which mandates reversal. This court finds that the substantial weight of the evidence dictates that the plaintiff has been under a disability since his alleged onset date, and therefore the plaintiff is entitled to disability benefits.

Done, this 2nd of September, 2009.

*[signature]*
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE